IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff/Respondent,*<br><br>vs.<br><br>MAURICE PITTMAN,<br><br>*Defendant/Petitioner.* | Case No. 17-cr-10089-01-EFM<br>(6:20-cv-01222-EFM) |

**MEMORANDUM AND ORDER**

Petitioner Maurice Pittman brings this Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 78). Because review of Pittman's motion and accompanying court record conclusively shows that he is not entitled to relief, the Court denies the motion without an evidentiary hearing.

### I. Factual and Procedural Background

The facts surrounding Pittman's judgment of conviction are as follows. In April 2017, a reliable confidential informant told Police Officers Brock Kampling and Matt Fisher that Pittman may be selling drugs out of his white Cadillac in a Burger King parking lot in Wichita, Kansas. Because Officers Kampling and Fisher were working on unrelated matters, they asked Officers Boyd and Atkins to surveil the area until they arrived. Officer Boyd saw the white Cadillac there and took up a surveillance position nearby. Officer Boyd observed a black male exiting Burger King and getting into the driver's side of the white Cadillac. A white SUV then pulled up to the

Cadillac and an individual from the SUV got into the Cadillac. Then, the same individual exited the car and got back into the white SUV, and both cars left the Burger King parking lot. Officer Boyd called Officers Kampling and Fisher to relay this information and tell them he believed the Cadillac was about to depart.

Shortly thereafter, Officers Kampling and Fisher pulled into the QuikTrip gas station directly across the street from the Burger King. Through their police database, they viewed Pittman's prior mugshot and learned he had a suspended license. Almost immediately, Pittman coincidentally pulled into the QuikTrip parking lot. Because the lot was well-lit, the officers recognized Pittman as the driver and sole occupant of the Cadillac.

After Pittman parked, he exited the vehicle and began walking towards the QuikTrip. Officer Fisher identified himself and told him to stop, but Pittman kept walking. At the front doors of the QuikTrip, Officer Fisher apprehended Pittman and placed him under arrest for driving with a suspended license. In a search incident to his arrest, Officer Fisher found cocaine, packaged for resale, and a large amount of cash.

After learning that Pittman had drugs on him, Officer Kampling decided to search the Cadillac for additional evidence of drug dealing. Officer Boyd, however, had already begun searching it. When Officer Boyd arrived at QuikTrip, he walked around the Cadillac looking for evidence in plain view. The driver's side window was partially open, and Officer Boyd smelled marijuana coming from inside the car. He found a green backpack on the driver's floorboard, which contained packaged marijuana. He also found a firearm under the driver's seat.

In June 2017, a grand jury indicted Pittman on four counts: (1) possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2; (2) possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A),

and 18 U.S.C. § 2; (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and § 2; and (4) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 2. Pittman moved to suppress the evidence recovered from the Cadillac he was driving before the arrest. The Court denied Pittman's motion after an evidentiary hearing. The Court noted that Pittman did not challenge his arrest for driving with a suspended license or the search of his person incident to his arrest, which yielded "both drugs packaged for distribution or for resale, along with large amounts of cash, indicating that perhaps some resale had occurred." The Court held that Officer Boyd's testimony that he smelled marijuana was credible, and therefore, he had probable cause to search the vehicle. In the alternative, the Court held that Pittman's car ultimately would have been subject to a probable cause search because of the informant's tip, Officer Boyd's observations, and the drugs and large sum of money found on Pittman's person.

In May 2018, Pittman conditionally pleaded guilty to Counts 1, 2, and 4 of the Indictment. The plea agreement preserved Pittman's right to appeal the Court's denial of his motion to suppress. It also included a provision limiting Pittman's right to collaterally attack his eventual sentence. Paragraph 9 of the plea agreement stated as follows:

> With the exception of the denial of his motion to suppress evidence, the defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein . . . . The defendant also waives the right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). However, the defendant retains the right to appeal the District Court's decision denying his motion to suppress evidence. Notwithstanding the foregoing waivers, the parties understand that defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

Pittman's counsel summarized the waiver provision at the plea hearing:

> COUNSEL: Paragraph 9 is the waiver of appeal and collateral attack. I have always considered this to be one of the most important provisions in a plea agreement. With the exception of the denial of the motion to suppress evidence, Mr. Pittman is waiving any right to appeal or collateral attack of any matter in connection with his prosecution, conviction, or the components of his sentence.
>
> Essentially he waives the right to appeal any kind of sentence except to the extent the Court departs upward from the sentencing guideline range that the Court determines to be applicable; and he always, of course, he retains the right to appeal the decision denying the motion to suppress evidence, and notwithstanding any of that, of course he can't waive a claim of ineffective assistance of counsel. That's not allowed by our Tenth Circuit juris prudence.

After counsel summarized paragraph 9 and other provisions of the plea agreement, the Court asked Pittman whether he understood the terms and consequences of his plea agreement. Pittman responded that he did.

In the plea agreement, Pittman also acknowledged that "that he is entering into this Plea Agreement and is pleading guilty because he is guilty." He further acknowledged "that he is entering his guilty plea freely, voluntarily, and knowingly." The Court discussed this with Pittman at his plea hearing:

> THE COURT: Aside from the provisions of the plea agreement and the conditional nature of the plea agreement, has anyone promised you anything or threatened you in any way to get you to enter your plea agreement?
>
> THE DEFENDANT: No, Your Honor.
>
> . . .
>
> THE COURT: Mr. Pittman, you understand that you would be admitting under oath that you committed Counts 1, 2, and 4 and to which you are pleading and that you would be found legally guilty of those counts? Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

> THE COURT:  And if you sign the plea petition and present it to me it means that you want to enter your plea of guilty and you want me to accept your plea and find you guilty, right?
>
> THE DEFENDANT:  Yes, Your Honor.

The Court held a sentencing hearing on July 30, 2018.  Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report, which presented Pittman at an Offense Level 21 and Criminal History Category VI, with an advisory guideline range of 77 to 96 months' incarceration.  The Court sentenced Petitioner to 96 months' imprisonment with a three-year term of supervised release.

Pittman appealed this Court's denial of his motion to suppress to the Tenth Circuit.[1]  On appeal, Pittman argued that this Court erred (1) in finding that "no evidence" undermined Officer Boyd's testimony that he smelled marijuana inside Petitioner's vehicle and (2) because Officer Boyd was not a credible witness, he lacked probable cause to search the vehicle.  The Tenth Circuit rejected these arguments, concluding that this Court's factual findings were not clearly erroneous based on the record.  Ultimately, the Tenth Circuit affirmed the Court's denial of Pittman's motion to suppress.

In August 2020, Pittman filed the instant § 2255 motion asking the Court to vacate his conviction and sentence.  Petitioner asserts four grounds for relief.  First, Pittman asserts that "[t]he informant/tipster[']s anonymous tip is lacking in indicia, reliability, informant's veracity and basis of knowledge. . . . There is nothing [in] the record to prove that the tipster was honest or if there really was a tipster."  Second, Pittman asserts that "Officers seized Pittman within the meaning of the 4th [A]mendment.  Arrest stop & search was illegal. Officers grabbed Pittman by the wrist and

---

[1] *United States v. Pittman*, 782 F. App'x 663 (10th Cir. 2019).

snatched him out of the gas station. The search and stop was a 4th Amendment violation." Third, Pittman asserts that the search of his vehicle was unlawful because "Defendant never got pulled over for it to be a car stop. So with that said officers needed a warrant to search the car." And fourth, Pittman asserts that he received ineffective assistance of counsel because (1) his lawyer should not have conceded the stop, arrest, and search of his person was lawful and (2) his lawyer ineffectively advised him to take the plea and misstated the sentence he would receive.

## II.  Legal Standard

Under 28 U.S.C. § 2255(a),

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts,

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . . If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[2] The petitioner

---

[2] 28 U.S.C. § 2255(b).

must allege facts that, if proven, would warrant relief from his conviction or sentence.[3] An evidentiary hearing is not necessary where a § 2255 motion contains factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[4]

Finally, Pittman appears pro se. Therefore, his pleadings are to be construed liberally and not held to the standard applied to an attorney's pleadings.[5] If a petitioner's motion can be reasonably read to state a valid claim on which he could prevail, a court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[6] It is not, however, "the proper function of the district court to assume the role of advocate for the pro se litigant."[7] For that reason, the court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.[8]

### III. Analysis

#### A. Waiver of Collateral Rights

Pittman's claims in grounds one, two, and three allege that the officers unlawfully seized him and searched his person and vehicle. Pittman presents these claims as violations of the Fourth Amendment, not as ineffective assistance of counsel claims. The government argues that Pittman

---

[3] *See Hatch v. Okla.*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

[4] *See id*. (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

[5] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

[6] *Id.*

[7] *Id.*

[8] *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

has waived these claims because he waived the right to bring collateral attacks not related to ineffective assistance of counsel or prosecutorial misconduct in his plea agreement.

The Tenth Circuit has adopted a three-prong test to determine the enforceability of a plea agreement waiver. Under this test, the Court must consider: " '(1) whether the disputed claim falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.' "[9] Applying this test to Pittmans's claims, the Court concludes that Pittman waived his right to collaterally attack his sentence.

*1.    Scope of the Waiver*

The first question is whether Pittman's present motion is within the scope of his plea agreement waiver. Plea agreements are governed by ordinary contract principles.[10] Accordingly, the touchstone of the Court's analysis under the first prong is to evaluate the plea agreement's plain language.[11] Paragraph 9 of the plea agreement states, in relevant part:

> With the exception of the denial of his motion to suppress evidence, the defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein . . . . The defendant also waives the right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). . . . Notwithstanding the foregoing waivers, the parties understand that defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

---

[9] *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (quoting *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004)) (alterations omitted).

[10] *United States v. Kutilek*, 260 F. App'x 139, 144 (10th Cir. 2008) (citing *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004)).

[11] *Id*. at 143-44 (citing *Anderson*, 374 F.3d at 957-58).

Pittman's claims of unlawful search and seizure unquestionably fall within the scope of the waiver of collateral-attack rights. Although the plea agreement gave Pittman the right to appeal the denial of his motion to suppress, these claims do not fall within this exception. Instead, they are collateral attacks. They complain about the substance of, or proceedings that determined, his original sentence.[12] Pittman not only agreed to waive any such challenge, but the plea agreement specifically named § 2255 motions as waived.

Pittman's claims based on unlawful search and seizure also do not fall within the limitations imposed by the Tenth Circuit in *United States v. Cockerham*.[13] In *Cockerham*, the Tenth Circuit held "that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver."[14] Here, Pittman's claims are stand-alone Fourth Amendment claims. Therefore, these claims do not meet any exception to the plea agreement's waiver of collateral attack rights.

*2.    Knowing and voluntary waiver*

Next, the Court considers whether Pittman knowingly and voluntarily waived his right to collaterally attack his sentence, keeping in mind that the burden resides with Pittman to show that his waiver was not made knowingly or voluntarily.[15] The Court considers two factors in assessing

---

[12] *See United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003) ("The conventional understanding of 'collateral attack' comprises challenges brought under, for example 28 U.S.C. § . . . 2255 . . . . These are extraordinary remedies that complain about the substance of, or proceedings that determined, a defendant's original sentence or conviction.").

[13] 237 F.3d 1179 (10th Cir. 2001).

[14] *Id*. at 1187.

[15] *United States v. Smith*, 500 F.3d 1206, 1210 (10th Cir. 2007) (citation omitted).

the voluntariness of Pittman's waiver.[16]  First, the Court examines whether the plea agreement states that Pittman entered the plea agreement knowingly and voluntarily, and second, the Court considers whether there was an adequate Federal Rule of Criminal Procedure 11 colloquy addressing the matter before Pittman entered his guilty plea.[17]

Pittman's plea agreement stated that he "knowingly and voluntarily waives any right to . . . collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed."  Pittman further affirmed in his plea agreement that "he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress, or coercion."

The plea colloquy also confirms that Pittman knowingly and voluntarily entered his guilty plea and waived his collateral attack and appeal rights.  During the hearing, Pittman swore to the truth of his representations to the Court.  Pittman's counsel advised the Court that the plea agreement contained a collateral attack waiver provision and summarized it on the record.  After his counsel had summarized this and other provisions, Pittman swore that he understood the terms and consequences of his plea agreement.  He also told the Court that no one promised him anything or threatened him to enter into the plea agreement.  The Court then concluded that Pittman "has made his plea freely, voluntarily, . . . and without fear, coercion, and with a full understanding of those consequences."  Accordingly, the Court is satisfied that Pittman entered his plea knowingly and voluntarily.

---

[16] *Id*. at 1210.

[17] *Id*. at 1210-11 (citing *Hahn*, 359 F.3d at 1324).

### 3. *Miscarriage of justice*

Under the third prong, the Court must consider whether enforcing the waiver will result in a miscarriage of justice. A miscarriage of justice occurs under the four following circumstances: (1) "where the district court relied on an impermissible factor such as race," (2) "where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid," (3) "where the sentence exceeds the statutory maximum," or (4) "where the waiver is otherwise unlawful."[18] "To be 'otherwise unlawful,' an error must 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' "[19] The burden to demonstrate a miscarriage of justice rests on the defendant.[20]

No miscarriage of justice occurred in this case. Nothing in Pittman's motion suggests that the Court relied on an impermissible factor, such as race, or that Pittman's counsel was ineffective in the negotiation of the waiver. Furthermore, Pittman's sentence did not exceed the statutory maximum. The Court sentenced him to 96 months on Count 1, where the statutory maximum is 20 years; 60 months on Count 2, where the statutory maximum is 5 years; and 96 months on Count 4, where the statutory maximum is 10 years.[21] Pittman also fails to show any error that seriously affects the "fairness, integrity or public reputation of judicial proceedings."[22] Therefore, enforcing the collateral attack waiver in Pittman's plea agreement would not result in a miscarriage of justice.

---

[18] *Id*. at 1212 (citing *Hahn*, 359 F.3d at 1327); *see also United States v. Polly*, 630 F.3d 991, 1001 (10th Cir. 2011) (recognizing that this is an exclusive list).

[19] *Id*. (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration omitted)).

[20] *Anderson*, 374 F.3d at 959 (citation omitted).

[21] *See* Presentence Investigation Report, Doc. 48, p. 20, ¶ 94.

[22] *Smith*, 500 F.3d at 1213.

The Court therefore concludes that Pittman's claims under grounds one, two, and three constitute a collateral attack on his prosecution, conviction, or sentence that are unrelated to ineffective assistance of counsel or prosecutorial misconduct. These claims are waived under the collateral attack provision in his plea agreement. The Court enforces the waiver provision and dismisses these claims.

### B.     Ineffective Assistance of Counsel

In ground four of his § 2255 petition, Pittman alleges that his counsel performed ineffectively in two ways. First, he alleges that his counsel should not have conceded that his arrest for driving with a suspended license and search of his person was lawful. According to Pittman, because he was "Terry stop[pe]d on that day . . . [t]here was no need to stop defendant nor put officers hands on defendant." Second, he argues that counsel deficiently advised him to take the plea because he was a career offender under the U.S. Sentencing Commission Guidelines.

To succeed on a claim of ineffective assistance of counsel, a petitioner must meet the two-prong test set forth in *Strickland v. Washington*.[23]  Under *Strickland*, a petitioner must show: (1) his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the petitioner because it deprived him of the right to a fair trial.[24]  To prevail on the first prong, a petitioner must demonstrate the omissions of his counsel fell "outside the wide range of professionally competent assistance."[25]

---

[23] 466 U.S. 668 (1984).

[24] *Id*. at 687.

[25] *Id*. at 690.

-13-

This standard is "highly demanding."[26]  Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[27]  The reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error.[28]  "[E]very effort should be made to 'eliminate the distorting effects of hindsight.' "[29]

With regard to the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[30]  The court must determine "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[31]  Courts reviewing an attorney's performance must exercise deference, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[32]  A failure to prove one of the *Strickland* prongs is dispositive to a petitioner's claim, and a court may dispose of either the first or second prong, whichever is easier to resolve.[33]

---

[26] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[27] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quoting *Hatch*, 58 F.3d at 1459) (alteration in original).

[28] *See Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996).

[29] *Id*. at 1114 (quoting *Strickland*, 466 U.S. at 689).

[30] *Strickland*, 466 U.S. at 694.

[31] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citation omitted).

[32] *Strickland*, 466 U.S. at 690.

[33] *United States v. Orange*, 447 F.3d 792, 796-97 (10th Cir. 2006) (citations omitted).

### 1. Counsel's Concession that Pittman's Arrest Was Lawful

Pittman's counsel did not ineffectively concede that Pittman's arrest and the subsequent search of his person were lawful. The officers had probable cause to arrest Pittman because they saw him commit a crime: driving on a suspended license in violation of K.S.A. § 8-262. Once the officers saw Pittman commit a crime, they had probable cause to arrest him for the offense without first obtaining a warrant.[34] And, once the officers lawfully arrested Pittman, they were lawfully entitled to search him incident to his arrest.[35]

Pittman argues that his stop, seizure, and search incident to arrest were unlawful because there was never a car stop and he was *Terry* stopped by the officers. Pittman suggests that the officer's frisking and searching him violated *Terry's* scope requirement. *Terry*, however, has no application to Pittman's arrest and subsequent search of his person. *Terry* applies to investigative detentions and not arrests.[36] Here, Pittman was arrested based on probable cause that he was driving on a suspended license in the officers' presence. Because he was lawfully arrested, it is irrelevant whether the officers complied with *Terry*.

In sum, Pittman's counsel did not act ineffectively by conceding that the arrest and search incident to the arrest were lawful. Because Pittman's argument lacks merit, Pittman was not

---

[34] *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (concluding that officers may make a warrantless arrest where there "is probable cause to believe that a criminal offense has been or is being committed") (citations omitted); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

[35] *Virginia v. Moore*, 553 U.S. 164, 176-77 (2008) (citation omitted).

[36] *See Terry v. Ohio*, 392 U.S. 1, 29 (1968) (distinguishing a *Terry* stop from a search incident to arrest).

prejudiced by counsel's failure to raise the argument at the hearing for the suppression motion.[37] Pittman therefore fails to satisfy the first Strickland prong. This assignment of error is without merit and dismissed.

### 2. Counsel's Advice Regarding Plea and Sentence

Pittman also asserts that his counsel's performance was ineffective because he informed Pittman that he was a career offender under the Guidelines. According to Pittman, his counsel told him that he faced a sentence of 155 to 188 months' imprisonment if he took the plea and a life sentence if he did not because of the 18 U.S.C. § 924(c) count. Pittman, however, is not entitled to relief because he cannot meet the second *Strickland* prong—that he was prejudiced by his counsel's incorrect advice.

"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."[38] To prove prejudice, "a defendant must show the outcome of the plea process would have been different with competent advice."[39] In cases where a petitioner pleads guilty, the Supreme Court has held that prejudice can only be shown if there is "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial."[40]

Here, even if Pittman's counsel misadvised him about the applicability of the career-offender guideline, Pittman was not prejudiced. The PSR did not classify Pittman as a career

---

[37] *See Glynn v. Heimgartner*, 2013 WL 2449545, at *11 (D. Kan. 2013) (citing *Orange*, 447 F.3d at 796) ("Counsel's failure to raise a meritless issue is not prejudicial, so [it] cannot constitute ineffective assistance.").

[38] *Lafler v. Cooper*, 566 U.S. 156, 168 (2012).

[39] *Id*. at 163 (citations omitted).

[40] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

offender under U.S.S.G. § 4b1.1, and the Court did not sentence Pittman as a career offender. Furthermore, counsel correctly advised Pittman that he could face a life sentence on the § 924(c) count because the statutorily authorized maximum term of imprisonment for this count is life.[41] Pittman therefore fails to show any prejudice as a result of his counsel's allegedly false advice regarding his potential sentence. This assignment of error is without merit and is dismissed.

## IV.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. A court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[42] A petitioner satisfies this burden if " 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.' "[43] For the reasons explained above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court denies a COA.

**IT IS THEREFORE ORDERED** that Pittman's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 78) is hereby **DENIED**.

---

[41] Presentence Investigation Report, Doc. 48, p. 20, ¶ 96.

[42] 28 U.S.C. § 2253(c)(2). The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issue a COA. *See* 28 U.S.C. § 2253(c)(1).

[43] *Saiz v Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v Dretke*, 524 U.S. 274, 282 (2004)).

-17-

**IT IS SO ORDERED**.

Dated this 1st day of March, 2021.


                                            ERIC F. MELGREN
                                            UNITED STATES DISTRICT JUDGE